UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MELINDA DAWSON**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**DS PROSPECTING LLC**, a Florida limited liability company,<br><br>*Defendant.* | Case No. : 1:18-cv-1246<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Melinda Dawson ("Dawson" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant DS Prospecting LLC ("DS Prospecting" or "Defendant") to: (1) stop Defendant's practice of sending unsolicited text messages using an "automatic telephone dialing system" ("ATDS") to cellular telephones without prior express consent; (2) stop Defendant from sending unsolicited text messages to consumers who are registered on the National Do Not Call Registry; and (3) obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1.  Plaintiff Melinda Dawson is a natural person and resident of Cuyahoga County, Ohio.

2. Defendant DS Prospecting is a limited liability company organized and existing under the laws of the State of Florida. Defendant conducts business in this District. DS Prospecting can be served through its registered agent, Douglas J. Shrader, at 16290 SW 17th Ave., Ocala, Florida 34473.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which is a federal statute.

4. This Court has personal jurisdiction over Defendant because Defendant solicits significant consumer business in this District, has entered into contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, and/or was directed, to this District. Specifically, Plaintiff received the prerecorded call at issue on her cellular telephone, in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON ALLEGATIONS OF FACT

6. Defendant DS Prospecting owns and/or operates a number of websites purporting to assist consumers with finding "rent to own" properties.

7. In an effort to market its services, DS Prospecting, sends unsolicited autodialed text messages to cellular telephones.

8. Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of repeated **unsolicited** text messages to consumers' cellular telephones—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

9. As explained by the Federal Communications Commission ("FCC")[1], the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

10. Yet, in violation of this rule, Defendant fails to obtain any prior express written consent to send text messages to consumers' cellular telephone numbers.

A. **Bulk SMS Marketing**

11. In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk advertisement and/or solicitation messages cheaply.

12. Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946,

---

[1] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).

954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

13. Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. A SMS message is a text message call, directed to a wireless device, through the use of the telephone number assigned to the device.

14. When a SMS message call is successfully made, the recipient's cellular telephone alerts him or her that a message has been received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party instantaneously virtually anywhere worldwide.

**B. Defendant Transmits Text Messages to Consumers Who Do Not Want Them**

15. Defendant sends text messages to consumers' cellular telephones in an attempt to solicit business.

16. In sending these promotional text messages, Defendant takes no steps to acquire the oral or written prior express consent of the Plaintiff, or the other members of the Class who received the unsolicited text messages.

17. Defendant made, or had made on its behalf, the same (or substantially the same) unsolicited text message calls *en masse* to hundreds or thousands of cellular telephone numbers owned or utilized by class members over a period of many years.

4

18. In sending the unsolicited text messages at issue in this Complaint, Defendant utilized an ATDS. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

19. Defendant was, and is aware, that its unsolicited text messages were and are being made without the prior express consent of the text message recipients.

20. Defendant knows, or is reckless in not knowing, that its SMS text messages to these cellular subscribers are unauthorized as it fails to obtain prior express written consent before sending those text messages to consumers. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

21. Telemarketers can easily and inexpensively avoid calling consumers who are registered on the National Do Not Call Registry by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

22. To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

5

23. There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[2] Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[3]

24. By sending the unsolicited text messages at issue in this Complaint, Defendant caused Plaintiff and the other members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

25. In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of actual or statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

---

[2] *See e.g.* http://www.dncsolution.com/do-not-call.asp;
http://www.donotcallprotection.com/do-not-call-compliance-solutions-1;
http://www.mindwav.com/tcpa_compliance_solution.asp;
[3] https://www.neustar.biz/services/tcpa-compliance

## FACTS SPECIFIC TO PLAINTIFF MELINDA DAWSON

26. Plaintiff Dawson is the owner/possessor of a cellular telephone number ending in -8317 and has been for a considerable amount of time.

27. Plaintiff registered her cellular telephone number on the National Do Not Call Registry on November 3, 2006.

28. On May 24, 2018 at 2:01 pm, Plaintiff received an unsolicited text message from DS Prospecting on her cellular telephone from short code 408-07.[4] The May 24, 2018 text message stated, "DS: MELINDA Own a 3 BR 2 Ba home for 398 a month with no closing costs. Visit: byetorent.com Txt End to Stop"

29. The following is a screenshot taken from Plaintiff's cellular telephone displaying the aforementioned message:

---

[4] A short code is akin to a telephone number for text messages.



30. Clicking on the hyperlink in the text message sends a consumer to http://ahousewaits.com/, a website owned or operated by DS Prospecting:



31. The text message at issue was unquestionably sent by DS Prospecting and was sent using an automated text messaging system.

32. Specifically, the text message at issue clearly identify DS Prospecting as the sender and provide a hyperlink to a website owned and/or operated by DS Prospecting.

33. DS Prospecting explicitly states on their website "Our short code is 40807."[5]

34. Furthermore, as demonstrated by the screenshot below, text messages sent **to** the 408-07 short code utilized by Defendant clearly identify DS Prospecting as the sender of the text message at issue:

---

[5] http://www.dsprospecting.com/tos.html

9



35. DS Prospecting also owns and/or operates a number of other nearly identical websites, such as http://houseinghelp.com/ and http://www.directhomeline.com/.

36. Plaintiff does not have a relationship with Defendant and has never requested that Defendant send text messages to her. Plaintiff has not visited any of the websites owned and/or operated by Defendant. Simply put, Plaintiff has never provided her prior express written consent to Defendant to send text messages to her.

37. While the various websites DS Prospecting owns and/or operates contain purported terms of service[6] that include both mandatory arbitration and class action

---

6 *See e.g.* http://www.dsprospecting.com/tos.html; htttps://www.dsninformation.com/tos.html; http://ahousewaits.com/pirvacy.html#Terms; http://dshrader300.omb10.com/terms

10

waiver provisions, those terms would not, and cannot, apply to the Class as the members of the Class did not visit those websites nor did they submit information through those websites.

38. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

39. By sending unauthorized text messages as alleged herein, Defendant has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the text messages disturbed Plaintiff's use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

40. In order to redress these injuries, Plaintiff, on behalf of herself and the other members of the Class, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cellular telephones.

41. On behalf of the Class, Plaintiff seeks an injunction requiring DS Prospecting to cease all unsolicited text messaging activities, and to further cease placing calls or sending text messages to phone numbers listed on the National Do Not Call

Registry, and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

42. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Class:

> **Autodialed No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages; (2) to the person's cellular telephone number; and (3) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to send automated text messages to the Plaintiff.

43. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

44. On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

45. There are several questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class that may be answered in a single stroke include, but are not necessarily limited to the following:

    (a) whether Defendant's conduct constitutes a violation of the TCPA;

    (b) whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Class;

    (c) whether Defendant systematically sent text messages to consumers whose telephone numbers were registered with the National Do Not Call Registry;

    (d) whether members of the Class are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;

    (e) whether Defendant obtained prior express written consent to sending text messages to members of the Class; and

    (f) to the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

46. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in similar, if not identical injuries to the Plaintiff and to all of the other members of the Class. Such injuries include, but are not limited to, the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellular telephones, as a result of the transmission of the unsolicited text messages alleged herein. Plaintiff and the other members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting unsolicited text messages. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct. Plaintiff, like all

members of the Class, received unsolicited text messages from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of herself and all absent members of the Class.

47. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

48. The suit may be maintained as a class action under the Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief. Defendant has acted and fails to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the unsolicited text messages at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

49. In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive,

and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited text message from Defendant. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

50. Adequate notice can be given to the members of the Class directly using information maintained in Defendant's records or through notice by publication.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

51. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

52. Defendant and/or its agents agent transmitted unsolicited text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the

capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse,* without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

53. These unsolicited text messages were made *en masse* without human intervention and without the prior express written consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such unsolicited text messages.

54. At no time did Defendant obtain prior express written consent from the Plaintiff and the other members of the Autodialed No Consent Class to receive text messages. Also, at no time did Defendant obtain prior express consent through a written agreement that contained a disclosure informing Plaintiff or any other consumer that agreeing to receive text messages was not a condition of the purchase of any property or service.

55. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

56. In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Melinda Dawson, individually and on behalf of the Class, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Class as defined above; appointing Melinda Dawson as the representative of the Class and appointing her attorneys as Class Counsel;

2. An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Class;

3. An injunction requiring Defendant to cease all unsolicited text messaging and to honor opt out requests, and otherwise protect the interests of the Class;

4. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

5. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

6. An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

7. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

8. Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

                                                        **MELINDA DAWSON**, individually and on behalf of a Class of similarly situated individuals

Dated: June 1, 2018                        By:   /s/Adam T. Savett
                                                              One of Plaintiff's Attorneys

                                                     Adam T. Savett (VA73387)
                                                     adam@savettlaw.com
                                                   Savett Law Offices LLC
                                                   2764 Carole Lane
                                                   Allentown PA 18104
                                                   Telephone: (610) 621-4550
                                                   Facsimile: (610) 978-2970

                                                   Attorneys for Plaintiff and the Putative Class